**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rudolph Carl MAGNUSON,
Defendant–Appellant.**

No. 02–40236
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 2002.

---

Robert L. Rawls, Asst. U.S. Atty., Beaumont, TX, for Plaintiff–Appellee.

Denise S. Benson and Amy R. Blalock, Asst. Fed. Pub. Defenders, Tyler, TX, for Defendant–Appellant.

Before HIGGINBOTHAM, SMITH and CLEMENT, Circuit Judges.

PER CURIAM:

Rudolph Carl Magnuson pled guilty to one count of wire fraud, pursuant to a written agreement. Magnuson argues that the district court erroneously imposed a two-level sentencing enhancement for using "mass-marketing" in the commission of his offense and clearly erred in assessing a $20,000 fine. We affirm.

Magnuson operated an advance fee scheme, placing ads in grocery store tabloid newspapers promising interest-free loans. After collecting "application fees" and "deposits" from unwitting victims, Magnuson kept the money for his own use and did not extend a loan to any applicants.

He objects to the district court's imposition of a two-level enhancement under former U.S.S.G. § 2F1.1(b)(3) for using "mass-marketing" in the commission of his offense.[1] The sentencing guidelines define mass-marketing as a "plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (A) purchase goods or services; . . . or (C) invest for financial profit."[2] Magnuson argues that he did not engage in mass-marketing because placing a newspaper advertisement is passive, unlike solicitation by telephone, mail, or the Internet.

█ As a preliminary matter, we note that the definition of "mass-marketing" is not limited to the listed mediums—it explicitly contemplates "other means" of mass-marketing.[3] Moreover, Magnuson does not dispute that his advertisements reached a "large number of persons." The average circulation of one tabloid newspaper in which Magnuson advertised is 335,-900 every six days.

█ Magnuson's lone argument is that § 2F1.1(b)(3) is limited to "active" rather than "passive" marketing. This view is derived from Judge Berzon's dissent in the Ninth Circuit's recent decision in *United States v. Pirello*.[4] Judge Berzon argued that the use of the word "solicitation" in the guideline "denotes more than simply advertising" and "suggests some sort of one-on-one importuning."[5]

█ We decline to adopt such a restrictive view. The plain meaning of solicitation is to "solicit orders or trade, as for a business house."[6] Moreover, two of the mediums listed in the commentary note— mail and the Internet—are themselves passive and often lack the personal entreating required by Judge Berzon. A mass mailing to 300,000 people is no more active than an advertisement in a newspaper. Similarly, in a different context, we have recognized that many Internet websites are passive.[7] We agree with the majority in *Pirello* and the Second Circuit that § 2F1.1(b)(3) merely requires advertising that reaches a "large number of persons."[8] The district court did not err by imposing a two-level enhancement under § 2F1.1(b)(3).

█ Magnuson also argues that the district court clearly erred by imposing a $20,000 fine. District courts are directed to impose a fine in all cases, unless the defendant establishes that he will be unable to pay.[9] The defendant bears the burden of proving his inability to pay a fine, and may rely upon the PSR to establish his inability to pay.[10] Because the district court adopted the PSR in this case, the government was required to present evidence showing that Magnuson could, in

1. Former U.S.S.G. § 2F1.1(b)(3) has since been repealed and replaced by current U.S.S.G. § 2B1.1(b)(2)(A)(ii).

2. U.S.S.G. § 2F1.1 cmt. n. 3.

3. *United States v. Deming*, 269 F.3d 107, 109 (2d Cir.2001).

4. 255 F.3d 728 (9th Cir.2001).

5. *Id.* at 733 (Berzon, J., dissenting).

6. RANDOM HOUSE COLLEGE DICTIONARY 1250–51 (1982).

7. *Mink v. AAAA Develop. LLC*, 190 F.3d 333, 336 (5th Cir.1999).

8. *Pirello*, 255 F.3d at 731–32; *See Deming*, 269 F.3d at 109.

9. U.S.S.G. § 5E1.2(a).

10. *United States v. Fair*, 979 F.2d 1037, 1042 (5th Cir.1992).

fact, pay a fine.[11] Given that the PSR indicated that Magnuson had a net worth of $100,000, the government met its burden and the district court did not clearly err by imposing a $20,000 fine.

AFFIRMED.